# Exhibit 1

JUSTIN D. HEIDEMAN (USB #8897)
THOMAS R. MCCOSH (USB #15467)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Facsimile: (801) 374-1724
Email:   jheideman@heidlaw.com
          tmccosh@heidlaw.com
*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT; 8080 S. REDWOOD RD. SUITE 1701 WEST JORDAN, UTAH 84088; SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| UNLIMITED VENTURES UTAH, LLC; a Utah Limited Liability Company; SCARLETT MENJIVAR, an individual; and JOSUE RAMIREZ, an individual;<br><br>          Plaintiffs,<br><br>v.<br><br>LUIS ALEJANDRO MORENO, an individual; and EIRIKA MIRANDA, an individual; and DOES 1-10;<br><br>          Defendants. | **COMPLAINT FOR EVICTION**<br><br>Case No.<br><br>Judge: |

COMES NOW, Plaintiffs, by and through the undersigned counsel, and hereby alleges the following cause of action against Defendant(s):

1.      This is an action for the eviction of all tenants located at 7998 S. 3960 W., West Jordan, Utah 84088 (hereinafter the "Property").

2.      Defendants are residents of Salt Lake County, State of Utah. DOES 1-10 are persons unknown to Plaintiffs, who may be residing at the subject Property.

3.      Plaintiff Unlimited Ventures Utah, LLC ("Unlimited Ventures") is a Limited Liability Company registered in the State of Utah, which has a contractual agreement with Scarlett Menjivar ("Ms. Menjivar") and Josue Ramirez ("Mr. Ramirez") to manage the Property.

4.      Defendant Luis Alejandro Moreno ("Moreno") is currently residing at the Property.

5.      Defendant Erika Miranda ("Miranda"), also known as Erika Romero, is currently residing at the Property.

6.      The former owner of the Property, Sergio Romecin ("Sergio") entered into a Lease to Own agreement with Miranda on or around March 10, 2015. A true and correct copy of the Lease Agreement has been attached hereto as Exhibit A.

7.      Pursuant to that lease agreement, rent was established at a rate of $1,400.00 per month. *See* Exhibit A, p.1.

8.      The lease expired on its own terms, on March 11, 2017. *Id.*

9.      Before the expiration of the lease, Mr. Moreno moved into the Property.

10.     The lease specifies that:

>       "If Tenant maintains possession of the Premises for any period after the termination of this Lease ('Holdover Period'), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to 150% of the most recent rate preceding the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease."

>       *See* Exhibit A, p.2.

11.     Miranda remained in possession of the Premises at the conclusion of the lease term.

12.     Accordingly, beginning on April 1, 2017, rent during the Holdover Period is $2,100.00 per month.

13.     Miranda and Moreno never paid more than $1,550.00 per month.

14. There is no existing lease agreement establishing rent at $1,550.00 per month, and the lease contains an integration clause prohibiting verbal modification.

15. On May 1, 2017, Sergio attempted to sell the property to Moreno, subject to seller-financing. A true and correct copy of the Real Estate Purchase Agreement ("REPA") has been attached hereto as Exhibit B. The seller-financed contract for deed has been attached hereto as Exhibit C.

16. Despite the fact that a REPA was signed, the transaction was never consummated.

17. Mr. Moreno failed to provide failed to provide the earnest money payment of $3,000.00 to anybody at all (either Sergio or his escrow agent), as required in the REPA.

18. Moreno and Miranda continued making payments to Sergio in the amount of $1,550.00 per month, falling short of their $2,100.00 rent obligation.

19. Moreno and Miranda failed to many even a single monthly payment of $6,604.53, which the seller financed agreement would have required but-for Moreno's failure to consummate the transaction in the first place.

20. Sergio came to the conclusion that the attempted sale had fallen through.

21. Sergio made arrangements with Mr. Moreno and Ms. Miranda to show the home to prospective buyers.

22. Moreno and Miranda assented, and as residents, they helped with the showing of the home, demonstrating their own understanding that the REPA and the Seller Financed Agreement had been cancelled.

23.   In or around December 2017, Sergio sold the home to Plaintiffs Menjivar and Ramirez subject to Moreno and Miranda's holdover tenancy, and all rights and responsibilities accruing thereunder.

24.   Plaintiffs Menjivar, Ramirez, and Unlimited Ventures did not receive a rental payment from the Defendants on or before January 1, 2018.

25.   On January 9, 2018, Unlimited Ventures, acting on behalf of Menjivar and Ramirez, emailed Moreno a proposed lease agreement, asking for him to review the contract and sign it, and informing Mr. Moreno that if he and Ms. Miranda wanted to stay in the Property, rent would be set at $2,000.00 per month.

26.   Mr. Moreno and Ms. Miranda never signed the proposed lease agreement.

27.   On or around February 27, 2018, Unlimited Ventures caused a 5-day notice to vacate or pay. The terms of that notice demanded payment of $1,900.00 for each month, or $3,800.00 total. A true and correct copy of that notice is attached hereto as Exhibit D.

28.   Upon information and belief, for January 2018 and February 2018, Moreno and Miranda erroneously submitted payment of $1,550.00 per month to Sergio.

29.   Sergio accepted these payments.

30.   After discovering this error, Unlimited Ventures claimed the $3,100.00 from Sergio.

31.   Upon information and belief, Moreno and Miranda were advised by their counsel to cease making rent payments to anyone.

32.   On March 1, 2018, Moreno and Miranda failed (intentionally or otherwise) to submit their rent payment to Unlimited Ventures or any other party in interest.

33.    On March 12, 2018, Christian Vargas ("Vargas") at the instruction of Unlimited Ventures, posted a fifteen day notice to vacate, a document which had been prepared by Heideman & Associates and provided to Unlimited Ventures for posting. A true and correct copy of the fifteen day notice to vacate is attached hereto as Exhibit E.

34.    By April 1, Moreno and Miranda still occupied the Property.

35.    By April 1, Moreno and Miranda had failed to make any payment toward their rent for occupation of the Property that month.

36.    By May 1, Moreno and Miranda again failed to make any payment toward their rent for occupation of the Property that month.

37.    Between the months of March and May, the parties engaged in protracted settlement discussions which ultimately failed.

38.    On or around May 14, Heideman & Associates prepared a 3-day notice to pay or vacate, and provided that document to the Plaintiffs so that the Plaintiffs could post it. Mr. Vargas posted the notice that day. An unsigned copy of that notice has been attached hereto as Exhibit F.

39.    Defendants did not comply with the notice.

40.    On or around May 15, Heideman & Associates prepared a second 3-day notice to pay or vacate, and again provided the document to the Plaintiffs so that the Plaintiffs could post it. Mr. Vargas posted the notice that day. An unsigned copy of that notice has been attached hereto as Exhibit G.

41.    Defendants did not comply with this notice either.

42.   Based on the failure to comply with the March 12 notice, Defendants have been unlawfully detaining the property since April 1.

43.   In the alternative, based on the May 14 notice, Defendants have been unlawfully detaining the property since May 18.

44.   In the alternative, based on the May 15 notice, Defendants have been unlawfully detaining the property since May 19.

45.   Assuming a 31 day month, rent is due on a pro-rata daily basis of $67.74.

46.   Based on the lease contract which was assumed by Scarlett Menjivar and Josue Ramirez at the time of their purchase of the Property, the amount of rent due to as compensation to Scarlett and Josue is presently $7,400. A breakdown of rent due is attached hereto as Exhibit H.

47.   As a direct and proximate result of the Defendants' unlawful detainer, Plaintiffs have and continue to accrue treble damages on a daily basis. Pursuant to Utah Code 78B-6-811, Plaintiff is entitled to treble damages at a rate of $203.22 per day for rent and $60.00 per month of late fees for five months, totaling $300.00 in late fees, also subject to the treble damages provision.

48.   Defendants have taken numerous actions and threats against the principal of Unlimited Ventures, LLC, if Plaintiffs filed for an eviction, including but not limited to the following: (a) threats to file a lawsuit claiming ownership of the Property; (b) threats to file a charge with the Division of Real Estate; (c) threaten state and federal criminal prosecution; (d) threats to name said principal's real estate broker in suit; (e) threats to file suit against Plaintiffs' attorneys; (f) inconsistent positions during settlement

negotiations, sometimes demanding correspondence in an unreasonably short period of time; and (g) bad-faith attempts to extort payment from said principal in exchange for confidentiality and protection from Defendants' own threatened abuses of criminal process.

49.     Because of the foregoing, Plaintiff Unlimited Ventures, LLC has incurred legal fees no less than $20,552.30, and shall likely continue to incur legal fees.

50.     The total due and owing to the Plaintiffs under the lease is $7,400 in rent, and $300 in late fees.

51.     A Rule 26.3 URCP notice is attached hereto. While Plaintiffs reserve the right to provide a supplemental disclosure, at this time, Plaintiffs only intend to call on the parties themselves, or, if any party is an entity, representatives on behalf of that entity.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, as follows:

A.     For the forthwith issuance of an Order of Restitution to evict the Defendants within three calendar days of the date the Order is entered, and all others claiming by, through, or under them, and to restore possession of the Property to the Plaintiffs herein;

B.     For an Order awarding Plaintiffs judgment against Defendants for $7,400.00 rent, plus $300.00 late fees, plus treble damages under Utah Code Ann. §78B-6-811, for an amount no less than $23,100.00;

C.     For an award of damage done to the Property as may be determined after Plaintiffs have had an opportunity to retake possession and evaluate potential damage;

D.     A judgment to be supplemented in the amount of trebled daily rent, or $203.22 per day, until Defendants remit possession of the Property;

E.      For an award of costs and reasonable attorneys fees pursuant to Utah Code Ann. §78B-6-

        811(5);

F.      For such other relief as this Court deems appropriate.

DATED and SIGNED      May 25, 2018.

                                              **HEIDEMAN AND ASSOCIATES**
                                              */S/ Thomas R. McCosh*
                                              THOMAS R. MCCOSH
                                              Attorney for Plaintiffs

**RULE 26.3 URCP NOTICE**

PLEASE TAKE NOTICE OF RULE 26.3 OF THE UTAH RULES OF CIVIL PROCEDURE:

   **(a) Scope.** This rule applies to all actions for eviction or damages arising out of an unlawful detainer under Title 78B, Chapter 6, Part 8, Forcible Entry and Detainer when the tenant is not a commercial tenant.

   **(b) Plaintiff's disclosures.**

      **(b)(1) Disclosures served with complaint and summons.** Instead of the disclosures and timing of disclosures required by Rule 26(a), and unless included in the complaint, the plaintiff must serve on the defendant with the summons and complaint:

         (b)(1)(A) any written rental agreement;

         (b)(1)(B) the eviction notice that was served;

         (b)(1)(C) an itemized calculation of rent past due, damages, costs and attorney fees at the time of filing;

         (b)(1)(D) an explanation of the factual basis for the eviction; and

         (b)(1)(E) notice to the defendant of the defendant's obligation to serve the disclosures required by paragraph (c).

      **(b)(2) Disclosures for occupancy hearing.**

         (b)(2)(A) If the plaintiff requests an evidentiary hearing to determine occupancy under Section 78B-6-810, the plaintiff must serve on the defendant with the request:

            (b)(2)(A)(i) any document not yet disclosed that the plaintiff will offer at the hearing; and

            (b)(2)(A)(ii) the name and, if known, the address and telephone number of each fact witness the plaintiff may call at the occupancy hearing and, except for an adverse party, a summary of the expected testimony.

         (b)(2)(B) If the defendant requests an evidentiary hearing to determine occupancy, the plaintiff must serve the disclosures required by paragraph (b)(2)(A) on the defendant no less than 2 days before the hearing. The plaintiff must serve the disclosures by the method most likely to be promptly received.

   **(c) Defendant's disclosures for occupancy hearing.**

      **(c)(1)** If the defendant requests an evidentiary hearing to determine occupancy under Section 78B-6-810, the defendant must serve on the plaintiff with the request:

         (c)(1)(A) any document not yet disclosed that the defendant will offer at the hearing; and

         (c)(1)(B) the name and, if known, the address and telephone number of each fact witness the defendant may call at the occupancy hearing and, except for an adverse party, a summary of the expected testimony.

      **(c)(2)** If the plaintiff requests an evidentiary hearing to determine occupancy, the defendant must serve the disclosures required by paragraph (c)(1) on the plaintiff no less than 2 days before the hearing. The defendant must serve the disclosures by the method most likely to be promptly received.

   **(d) Pretrial disclosures; objections.** No later than 14 days before trial, the parties must serve the disclosures required by Rule 26(a)(5)(A). No later than 7 days before trial, each party must serve and file counter designations of deposition testimony, objections and grounds for the objections to the use of a deposition and to the admissibility of exhibits.

# EXHIBIT A

## Lease with Option to Purchase

This Lease with Option to Purchase (this "Lease") is made effective as of March 10, 2015 ("Effective Date"), by and between Sergio Rodrigo Romecin ("Landlord"), and Erika Romero ("Tenant"). The parties agree as follows:

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant Four Bedroom, two bathroom single family home located at: 7998 S 3960 W West Jordan, UT 84088 (the "Premises") located at 7998 S 3960 W, West Jordan, Utah 84088.

**TERM.** The lease term will begin on March 11, 2015 and will terminate on March 11, 2017. If the Purchaser fails to exercise the option by such time and date, the option will automatically terminate and the Seller will be entitled to retain the non refundable consideration stated below.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly installments of $1,400.00 per month, payable in advance on the first (1st) day of each month. Lease payments shall be made to Landlord at Escrow Specialists, P.O. box 3287, Ogden, Utah 84409, which location may be changed, in writing by Landlord, with a minimum of seven (7) days advanced notice to Tenant.

**SECURITY DEPOSIT AMOUNT.** At the time of the signing of this Lease, Tenant shall pay to Landlord, in trust, a security non refundable deposit of $7,000.00.

The deposit shall be applied as follows:

Security Deposit: $7,000.00 to be applied towards total purchase price, held and disbursed for Tenant damages to the Premises or other defaults under this Agreement, if any, as provided by law. Deposit to be paid as follows: $2,000 when signing this contract, $2,000 on or before 04/01/2015, $2,000 on or before 05/01/2015 and $1,000 on or before 06/01/2015.

**POSSESSION.** Tenant shall be entitled to possession on the day of executing this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good condition as when delivered to Tenant, ordinary wear and tear excepted.

**USE OF PREMISES/ABSENCES.** Tenant shall occupy and use the Premises as a dwelling unit. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first (1st) day of the extended absence.

**PETS.** Tenant is permitted to have: _____Any_____ No additional pets shall be allowed without the prior written consent of Landlord.

This is a RocketLawyer.com document.

**PROPERTY INSURANCE.** Landlord and Tenant shall each be responsible to maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant shall be required to maintain renter's insurance of not less than $120.00 per year.

**DAMAGE CAUSED BY TENANT.** If any damage to the property shall be caused by their act or neglect, the Tenant shall forthwith repair such damage at their own expense, including damage to screens and windows where same is not covered by Landlord's insurance.

**MAINTENANCE.** Landlord shall have the responsibility to maintain the Premises in good repair at all times and perform all repairs necessary to satisfy any implied warranty of habitability except that Tenant shall be responsible for: Overall maintenance and home improvement. Tenant must notify Landlord within twenty-four (24) hours of any condition requiring maintenance.

**UTILITIES AND SERVICES.** Tenant shall be responsible for all utilities and services in connection with the Premises for the term of this Lease.

**TAXES.** Landlord shall pay all real estate taxes which may be levied against the Premises.

**DESTRUCTION OR CONDEMNATION OF PREMISES.** If the Premises are damaged or destroyed by fire or other casualty to the extent that enjoyment of the dwelling unit is substantially impaired, Landlord, in its sole discretion may elect to repair the Premises or terminate the Lease upon thirty (30) days' written notice to Tenant. If the Premises are condemned or cannot be repaired, this Lease will terminate upon twenty (20) days' written notice by either party.

**HABITABILITY.** Tenant, or an authorized agent on Tenant's behalf, has inspected the Premises and fixtures and acknowledges that the Premises are in a reasonable and acceptable condition of habitability for their intended use, and the agreed lease payments are fair and reasonable. If the condition changes so that, in Tenant's opinion, the habitability and rental value of the Premises are adversely affected, Tenant shall promptly provide reasonable notice to Landlord.

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provision of law to the contrary, if Tenant fails to cure any financial obligation within 5 days (or any other obligation within 10 days) after written notice of such default is provided by Landlord to Tenant, Landlord may elect to cure such default and the cost of such action shall be added to Tenant's financial obligations under this Lease.

**LATE PAYMENTS.** For any payment that is not paid within 10 days after its due date, Tenant shall pay a late fee of $60.00, or as otherwise provided by applicable law.

**HOLDOVER.** If Tenant maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to 150% of the most recent rate preceding the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall

This is a RocketLawyer.com document.

not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged the maximum amount allowable under applicable law for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling, at Tenant's expense, that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises, at Tenant's expense, that appropriately facilitate its use for such purposes. Such construction shall be undertaken and such fixtures may be erected only with the prior written consent of Landlord, which shall not be unreasonably withheld. At the end of the lease term, Tenant shall be entitled to remove, or at the request of Landlord, shall remove such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent, which shall not be unreasonably withheld, Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, tenants or workers. However, Landlord does not assume any liability for the care or supervision of the Premises. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant to Landlord.

**MECHANICS LIENS.** Neither Tenant nor anyone claiming through the Tenant shall have the right to file mechanics liens or any other kind of lien on the Premises and the filing of this Lease constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens will not be valid, and (2) take whatever additional steps that are necessary in order to keep the premises free of all liens resulting from construction done by or for the Tenant.

**SUBORDINATION OF LEASE.** This Lease is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Premises.

**OPTION TO PURCHASE.** Tenant, upon satisfactory performance of this Lease, shall have the option to purchase the real property described herein for a purchase price of $192,000.00, provided that the Tenant timely executes the option to purchase and is not in default of the Lease Agreement. Thereafter, each of the parties shall promptly execute any and all further instructions or other documents including a Sale Agreement which may be reasonably required for purchase of the real property.

**TITLE.** Landlord agrees to deliver, and Tenant agrees to accept, title to the Premises 12 months after executing Lease, subject only to (a) a lien for taxes and assessments levied against the

Premises, (b) any covenants, conditions, restrictions, easements, right, rights-of-way of record, and (c) such other exceptions as Landlord and Tenant approve in writing. Landlord shall deliver to Tenant a preliminary title report within thirty (30) days after Tenant's exercise of the option.

**NOTICE REQUIRED TO EXERCISE OPTION.** To exercise the Option to Purchase, the Tenant must deliver to the Landlord, a written notice of Tenants intent to purchase, not less than 90 days prior to the expiration of the Lease Term. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration date of the Lease Agreement.

**OPTION CONSIDERATION.** Nonrefundable option consideration in the amount of $7,000.00 paid by the Tenant as consideration for this Option to Purchase Agreement, shall be credited to the purchase price at closing if the Tenant timely exercises the option to purchase. If the Tenant doesn't exercise the option to purchase, the Tenant shall forfeit the nonrefundable option consideration.

**CLOSING AND SETTLEMENT.** Tenant agrees that closing costs in their entirety, including any points, fees, and other charges required by the third-party lender, shall be the sole responsibility of Tenant. The only expense related to closing costs apportioned to Landlord shall be the pro-rated share of the property taxes due at the time of closing, for which Landlord is solely responsible.

**FINANCING DISCLAIMER.**THE PARTIES ACKNOWLEDGE THAT IT IS IMPOSSIBLE TO PREDICT THE AVAILABILITY OF OBTAINING FINANCING TOWARDS THE PURCHASE OF THIS PROPERTY. OBTAINING FINANCING SHALL NOT BE HELD AS A CONDITION OF PERFORMANCE OF THIS OPTION TO PURCHASE AGREEMENT. THE PARTIES FURTHER AGREE THAT THIS OPTION TO PURCHASE AGREEMENT IS NOT ENTERED INTO IN RELIANCE UPON ANY REPRESENTATION OR WARRANTY MADE BY EITHER PARTY.

**REMEDIES UPON DEFAULT.** If Tenant defaults under this Option to Purchase Agreement or the Lease Agreement, then in addition to any other remedies available to Landlord at law or in equity, Landlord may terminate this Option to Purchase by giving written notice of the termination. If terminated, the Tenant shall lose entitlement to any refund of rent or option consideration. For this Option to Purchase Agreement to be enforceable and effective, the Tenant must comply with all terms and conditions of the Lease Agreement

**ACKNOWLEDGMENTS.** The parties are executing this Option to Purchase Agreement voluntarily and without any duress or undue influence. The parties have carefully read this Option to Purchase Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy.

**ASSIGNABILITY/SUBLETTING.** Tenant may assign but not sublease any interest in the Premises, nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which shall not be unreasonably withheld.

**NOTICE.** Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed to the party at the appropriate address set forth below. Such addresses may be changed from time to time by either party by providing notice as set forth below. Notices mailed in accordance with these provisions shall be deemed received on the third day after posting.

### LANDLORD:

Sergio Rodrigo Romecin
3504w 4650s
West Valley, Utah 84119

### TENANT:

Erika Romero

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of Utah.

**ENTIRE AGREEMENT/AMENDMENT.** This Lease contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by both parties.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**LANDLORD:**

Sergio Rodrigo Romecin

EXHIBIT B

# Real Estate Purchase Agreement

THIS AGREEMENT is made on May 01, 2017, between Sergio Rodrigo Romecin (hereinafter "Seller"), of 3503 W Danube Dr, Taylorsville, Utah 84118, and Alex Moreno (hereinafter "Buyer"), of 7998 S 3960 W, West Jordan, Utah 84088 for the sale of the below described property pursuant to the following terms and conditions:

## Legal Description and Address

The real property located at 7998 S 3960 W, West Jordan, Utah 84088, together with all buildings, improvements and fixtures constructed or located on the Land (Buildings) and all easements and rights benefiting or appurtenant to the Land (collectively the Real Property). The Real Property is legally described as: LOT:28 SEC/TWN/RNG/MER:SEC 32 TWN 3S RNG 1W LOT 28, LINSEY ESTATES 5412-1185, 5468-1838 5468-1839 5700-1528 5732-1314 5932-0202 6053-2812 6104-0361 6116-0954 6193-2419

## Purchase Price

Subject to the following conditions, Buyer shall make final payment for the property at closing in the total amount of $212,500.00 which accounts for the previously deposited sum of $2,500.00 in earnest moneys for a total purchase price of $215,000.00. Buyer agrees to pay the entire amount at closing. Concurrent with the execution of this Agreement, Buyer has deposited with Seller or Seller's Escrow Agent the sum of $2,500.00, (hereinafter referred to as "Earnest Money") as ~~$2,500.00~~ 13,000 earnest money and a partial payment of the consideration under the Contract. In the event that the purchase and sale shall be consummated pursuant to the terms of said contract, Seller's Escrow Agent shall, at such closing, deliver to Seller the Earnest Money, and Buyer shall be given credit toward the purchase price for the payment of the Earnest Money. Unless the Buyer does not make a good faith effort to obtain financing, the Buyer shall be returned their earnest money if closing does not occur.

*L M*
*13,000*
*SR*

## Closing Costs

In closing this transaction, Seller shall be charged with the following:

(a) The amount of real estate taxes and assessments prorated up to and including the date of transfer of title;

(b) The cost of any transfer tax;

(c) The cost of a title report, title search, and title guaranty policy in the amount of the purchase price;

(d) The cost of paying off and satisfying any mortgage indebtedness for which Seller is liable, together with the cost of any mortgage cancellation, recording fee or other costs incident to the

satisfaction of any such indebtedness;

(e) The cost of any required brokerage commission;

(f) One half of the escrow fee; and

(g) All other charges properly borne by Seller consistent with the terms of this Agreement;

and immediately thereafter shall deliver to Seller the balance of the funds in its hands due, and all documents due Seller.

On closing, Buyer shall be charged with the following:

(a) Any cost of financing this transaction which Buyer arranges for;

(b) The cost of filing the deed for record;

(c) The amount by which the cost of furnishing the title insurance exceeds the cost of furnishing a title guaranty policy, if Buyer elects to be furnished with title insurance;

(d) One half of the escrow fee; and

(e) All other charges properly borne by Buyer consistent with the terms of this Agreement;

and immediately thereafter, the escrow agent shall deliver to Buyer the title guaranty or title insurance, as the case may be, the record deed or Recorders' receipt, any prorations to which Buyer is entitled, and all other funds or documents due Buyer.

**Title Requirements**

Seller shall convey to Buyer good and marketable title to the property, by good and sufficient general warranty deed with all dower rights released. The deed shall be deposited into escrow on or before the closing date.

Seller shall accompany Seller's deed with a title guaranty policy in the amount of the purchase price issued by a general title company ("title company") in its customary form, guaranteeing record title to the Property to be good in Buyer subject only to the exceptions to be contained in the deed. However, Buyer may elect to be furnished with an Owner's Fee Policy of title insurance ("title insurance"), in the amount of the purchase price, insuring marketable title to be good in Buyer, subject only to the exceptions to be contained in the deed. In such event, in lieu of a title guaranty policy, Seller shall furnish Buyer with title insurance. Seller shall pay that portion of the costs which would have been incurred had a title guaranty policy been issued, and Buyer shall pay the remaining costs.

Immediately upon the execution hereof, Seller shall order from the title company a preliminary title

This is a RocketLawyer.com document.

report, with a special tax search included, in the form of a commitment to issue the required title policy requested by Buyer ("title report"). A copy of the title report shall be delivered to Buyer. Within 10 days after Buyer receives the title report, he shall notify Seller and the title company of all restrictions, reservations, limitations, easements, and conditions of record ("title defects") disclosed in the title report that are objectionable to Buyer. If Buyer notifies Seller of title defects, Seller shall cure or remove the same by the closing date. Seller shall remove all objectionable title defects that may be removed by the payment of money, and shall take reasonable steps necessary to remove all other title defects.

On the closing date, the escrow agent shall notify the parties whether the title company can issue its title guaranty or title insurance, showing as exceptions only those items in the title report to which Buyer did not object. If the escrow agent notifies the parties that (a) the title company will issue such title guaranty or title insurance, this transaction shall be consummated in accordance with the terms and provisions of this Agreement, or (b) the title company will not issue such title guaranty or title insurance, and if Buyer does not immediately waive the title defects claimed by the escrow agent to prevent such issuance or Seller does not cure the defects within the permitted period, this Agreement shall be null and void, the escrow agent shall return to the parties all funds and documents previously deposited by them into escrow, and the parties shall be fully released from any liability or obligation hereunder, except that Seller shall pay the full cost of the escrow and the title company's charges.

If Buyer waives the title defects preventing issuance of the title guaranty or title insurance by notifying the title company and the escrow agent, or if Seller has cured the title defects, the obligations of the parties shall not be affected by them.

### Warranties

Seller warrants and represents to Buyer as follows:

(a) Encroachments. All improvements now on the Property are entirely within the boundary lines of the land described as the Real Property, and no other adjoining property encroaches upon the land;

(b) Mechanic's liens. All work and labor performed and all materials furnished with respect to any improvements or repairs to the Real Property have been paid in full, and there will be no mechanic's liens or the possibility of any in connection with any such work, labor and materials performed on or furnished to the Real Property;

(c) Violations. Seller has no knowledge of any outstanding notices or orders from any governmental authority with respect to the condition of the Property or its repair, or with respect to any claim of a violation of any laws, ordinances, zoning codes, building codes or orders;

(d) Structural soundness. To Seller's best knowledge and belief, the personal property included as a part of this transaction and the improvements on the Property are structurally sound and in good condition and repair, including, without limitation, the roof, foundation, walls, heating and cooling



system, plumbing, water and electrical systems; and

(e) Assessments. All improvements made by the local government that now benefit or will benefit the Property upon completion have been assessed against it as of the execution date of this Agreement.

All of Seller's foregoing warranties and representations shall be continuing in nature, shall be effective on the closing date, and shall survive Seller's delivery of the deed to Buyer and the consummation of all matters and things at the closing.

## Inspection and Acceptance

Prior to the closing date, Seller agrees to correct, at Seller's expense, any violations found in connection with the inspection done to comply with the point-of-sale or similar ordinance required by the local governmental authority, if any. Evidence in writing that the corrections were made to the satisfaction of the local governing authority shall be given to Buyer prior to the closing date.

## Prorations

All general and special real estate taxes and assessments shall be prorated by the escrow agent as of the date the deed is filed for record, using the rate and valuation shown on the last available tax duplicate. If the proration does not fully reimburse Buyer for all real estate taxes and assessments accrued and unpaid with respect to the Property as of the record date of transfer of title, Seller shall promptly reimburse Buyer that amount accrued in excess of the proration credit upon the official certification of the real estate tax duplicate for the year in which transfer of title occurs. The escrow agent shall prorate any rents as of the date the deed is filed for record.

There shall be no proration of utilities. Seller shall cause the meters to be read for water, electricity, gas and other utilities, if any, as of the date of delivery of possession, and shall pay all utility charges to the date of the readings, after which the charges shall accrue to Buyer. The sum of $200 shall be held in escrow as security for the payment of utilities until Seller deposits into escrow receipts evidencing such payment.

## Financing

This Agreement is not contingent upon Buyer obtaining the necessary finance for the consummation of this Agreement.

## Closing

Closing is the date on which the Seller-executed deed is released to Buyer. The closing date is designated as May 01, 2017, provided there are no unforeseen delays such as clearing title. Time is of the essence, and in no event shall closing be later than 1 calendar days after the designated closing date, unless an extension is agreed upon in writing between Buyer and Seller.

## Escrow Agent

This transaction shall be closed in escrow with an escrow agent of Buyer's choice ("escrow agent"). Buyer shall deposit with the escrow agent an executed counterpart of this Agreement, which shall serve as the escrow instructions. The escrow agent may attach its standard conditions of acceptance, but if they are inconsistent or conflict with the terms of this Agreement, this Agreement shall control.

## Closing Documents and Funds

If on the closing date (1) the escrow agent then has on hand all necessary funds and documents to complete the transaction, and (2) the title company has stated that it shall be in a position to and will issue and deliver, upon the filing of the deed for record, the required title guaranty policy or title insurance, the escrow agent shall thereupon record the deed and all other required instruments and shall deliver to each party the funds and documents to which it is entitled, together with the agent's escrow statement.

Both Buyer and Seller have to submit all documentation and other information requested by the title company/escrow agent needed to close the transaction. The parties may have to fix a date and time with the title company/escrow agent to close the transaction.

## Possession

Seller shall deliver possession of the Property as of the closing date, in the condition as warranted by Seller and in no event in any worse condition than the condition as of the date of execution of this Agreement, less reasonable wear and tear.

## Risk of Loss

Risk of loss or damage to the property by fire or other casualty occurring up to time of closing is assumed by Seller. If the building or buildings or any other improvements on the Property are damaged or destroyed before transfer of record title, and the damages are $3,000 or less, this Agreement shall continue in full force and effect and Seller shall immediately assign to Buyer all of Seller's rights to the resulting insurance proceeds. If the damages are greater than $3,000, Buyer may either (a) continue this Agreement in full force and effect, and Seller shall immediately assign to Buyer all of Seller's rights to the insurance proceeds, or (b) rescind this Agreement, and all money, papers, or documents deposited by the parties shall be returned to them. Buyer shall assume risk of loss after record title to the Property is transferred to him. There shall be no proration of insurance. Seller shall retain his insurance until record title is transferred to Buyer, and Buyer shall procure his own policies of insurance to be effective from and after the date title to the Property is transferred to Buyer or his nominee.

## Release of Dower

Seller's spouse (if Seller is married), if not already a party, joins in the signing of this Agreement to

evidence his or her consent to the terms and provisions hereof, including the obligation to release of all dower and other marital rights in the Property upon its conveyance to Buyer.

## Notice

All notices under this Agreement shall be deemed to be sufficiently given if personally delivered or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed to the parties abovementioned addresses.

## Miscellaneous Provisions

(a) Governing Law: The laws of the State of Utah shall govern the Agreement.

(b) Parties Bound: This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

(c) Severability: In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision. This Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(d) Merger Clause: This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between Buyer and Seller and Agent, if any, with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters.

(e) Force Majeure: In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Agreement to be performed by the party (other than monetary obligations) and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the reasonable control of the party so delayed or hindered (a "Force Majeure Event"), then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay. Lack of financial resources on the part of either party shall not be a Force Majeure Event.

(f) Amendments. This Agreement may be amended by the parties only by a written agreement.

(g) Attorneys' Fees: If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled.

(h) Headings: Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

In witness of the mutual promises made above, Seller and Buyer have executed this contract.
SELLER:

_____
Sergio Rodrigo Romesin

$05-01-2017$
Date

BUYER:

_____
Alex Moreno

$05-01-2017$
Date

**BUYER:**

DATED:_____05-01-2017_____.

Alex Moreno
7998 S 3960 W
West Jordan, Utah, 84088


STATE OF UTAH, ss:COUNTY OF SALT LAKE, ss:

This instrument was acknowledged before me on this __1__ day of __May_____,
2017 by Alex Moreno.

Notary Public

Public

Title (and Rank)

My commission expires __April 16, 2018__

NOTARY PUBLIC
JORGE ENRIQUE UGCATEGUI
675341
COMMISSION EXPIRES
APRIL 16, 2018
STATE OF UTAH

**SELLER:**

DATED: _05 - 01 - 2017_

Sergio Rodrigo Romecin
3503 W Danube Dr
West Jordan, Utah, 84129

STATE OF UTAH, COUNTY OF SALT LAKE, ss:

This instrument was acknowledged before me on this _1_ day of _May_ ,
_2017_ by Sergio Rodrigo Romecin.

NOTARY PUBLIC
ENRIQUE USCATEGUI
075341
COMMISSION EXPIRES
APRIL 16, 2018
STATE OF UTAH

Notary Public

Public Notary
Title (and Rank)

My commission expires _April 16, 2018_

EXHIBIT C

THIS SPACE PROVIDED FOR RECORDER'S USE

WHEN RECORDED RETURN TO:

_____

_____

_____, _____, _____

## CONTRACT FOR DEED

This Contract ("Contract") is effective as of May 01, 2017 by and between
    - Sergio Rodrigo Romecin, a single person,
hereinafter referred to as "SELLER," whether one or more, and
    - Alex Moreno, 7998 S 3960 W, West Jordan, Salt Lake County, Utah, 84088,
hereinafter referred to as "BUYER," whether one or more, on the terms and conditions and for the
purposes hereinafter set forth.

**PROPERTY.** The property sold under this contract is located at 7998 S 3960 W, West Jordan,
Utah 84088 in Salt Lake County and is legally described as

LOT:28 SEC/TWN/RNG/MER:SEC 32 TWN 3S RNG 1W LOT 28, LINSEY ESTATES
5412-1185, 5468-1838 5468-1839 5700-1528 5732-1314 5932-0202 6053-2812 6104-0361
6116-0954 6193-2419

hereinafter referred to as "the Property."

**PURCHASE PRICE.** The agreed upon sales price for the Property is $215,000.00 with interest
from June 01, 2017, on the unpaid principal at the rate of 7.6214% per annum. The Seller hereby
acknowledges receipt of a down payment or earnest money totaling $3,000.00 which shall be
deducted from the total purchase price indicated above.

**TERMS OF PAYMENT.** Payments under this contract should be submitted to Escrow Specialists at P.O. Box 3287, Ogden, Utah 84409.

Unpaid principal after the Due Date shown below shall accrue interest at a rate of 7.6214% annually until paid.

The unpaid principal and accrued interest shall be payable in monthly installments of $6,606.34, beginning on July 1, 2017, and continuing until June 1, 2020 (the "Due Date"), at which time the remaining unpaid principal and interest shall be due in full.

All payments on this Contract shall be applied first in payment of accrued interest, if applicable, and any remainder in payment of principal.

If any payment obligation under this Contract is not paid when due, the remaining unpaid principal balance and any accrued interest, if applicable, shall become due immediately at the option of the Seller.

**LATE PAYMENT CHARGE.** The Buyer promises to pay a late charge of $50.00 for each installment that remains unpaid more than 7 day(s) after its Due Date. This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty.

**NON-SUFFICIENT FUNDS.** The Buyer shall be charged the maximum amount allowable under applicable law for each check that is returned to Seller for lack of sufficient funds in addition to any late payment charges allowable under this Contract.

**PREPAYMENT.** The Buyer reserves the right to prepay this Contract (in whole or in part) prior to the Due Date with no prepayment penalty.

**ENCUMBRANCES.** The Seller retains the right to use the Property as collateral on future loans so long as the indebtedness is paid in full prior to the Due Date of this contract. In the event the Seller defaults on any mortgage on the Property, the Buyer can pay on the mortgage and receive credit under this Contract for all payments. The Seller herein discloses the Property sold under this contract is currently encumbered in the following manner:

_____

_____

_____, _____, _____
$0.00

**MAINTENANCE AND IMPROVEMENTS.** Buyer agrees that any and all buildings, permanent fixtures and improvements currently on or subsequently added to the land or Property may not be removed, but will remain on the Property until the contract is fully performed. In the event of default by the Buyer under this Contract, any and all permanent fixtures and improvements made on the Property will remain with the Property.

**POSSESSION.** Buyer will maintain possession of the Property upon execution of this Contract.

**CONDITION OF PREMISES.** The Buyer recognizes the Property is being sold as is and the Seller is under no obligation to make any improvements or repairs during the time of this Contract.

**INSURANCE.** Seller agrees to maintain adequate property insurance on the Property equal to the assessed value of the Property from the date of signing this agreement. The Seller shall immediately notify the Buyer of any lapse in coverage. The Buyer is responsible for maintaining insurance on any personal property or other items the Buyer places inside or on the Property.

**TAXES AND ASSESSMENTS.** Buyer agrees to pay all taxes including but not limited to federal, state, and municipal, that arise as a result of this sale, excluding income taxes.

Seller shall pay all real estate taxes and assessments that may be levied against the Property. Buyer shall be responsible for all personal taxes or assessments that result from the Buyer's use of the Property.

**REMEDIES ON DEFAULT.** In addition to any and all other rights available according to law, if either party defaults by failing to substantially perform any material provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may elect to cancel this Contract if the default is not cured within 60 days after providing written notice to the defaulting party. The notice shall describe with sufficient detail the nature of the default. The Seller maintains the right and authority to reclaim the Property or to foreclose on the property if the default is not cured within 60 days.

**DEED.** Upon receipt of all payments required under this Contract, the Seller will furnish the Buyer with a Special Warranty Deed wherein the Seller conveys all of their interest in the Property to the Buyer. The Buyer shall be responsible for cost of recording the deed.

**ABSTRACT/TITLE POLICY.** The Seller will provide the Buyer with an updated abstract evidencing clear title or other accepted title documents upon receipt of all payments under this Contract.

**NOTICES.** Any notice or communication required or permitted under this Contract shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the addresses listed above or to such other address as one party may have furnished to the other in writing. The notice shall be deemed received when delivered or signed for, or on the third day after mailing if not signed for.

**ASSIGNMENT.** Neither party may assign or transfer this Contract without prior written consent of the other party, which consent shall not be unreasonably withheld.

**ATTORNEY FEES.** If any payment obligation under this Contract is not paid when due, the Buyer promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

**ENTIRE CONTRACT/AMENDMENT.** This Contract for Deed contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Contract for Deed. This Contract for Deed may be modified or amended in writing, so long as all parties obligated under this Contract sign the agreement.

**SEVERABILITY.** If any portion of this Contract for Deed shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Contract for Deed is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Buyer agrees to indemnify, hold harmless, and defend Seller from and against any and all losses, claims, liabilities and expenses, including reasonable attorney fees, if any, which Buyer may suffer or incur in connection with Buyer's possession, use or misuse of the Property, except due to Seller's negligent acts or omissions.

**GOVERNING LAW.** This Contract for Deed shall be construed in accordance with the laws of the State of Utah.

**WAIVER.** The failure of either party to enforce any provisions of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract for Deed.

**OTHER PROVISIONS.** Buyer to pay a total of $20,000 down after signing this contract in four payments of $5,000 in periods of 3 months each until paid off. First payment to be on or before 08/01/2017.

**TAX EXEMPTION.** Seller will be entitled to claim the property for the Federal Homestead Property Tax Exemption and any other exemption, should the property be eligible for such an exemption.

**RECORDING.** This Contract will be recorded by the Buyer immediately upon execution by all parties. The Buyer shall be responsible for the recording fees associated with recording the Contract.


Deed Drafted By:

_____

_____

_____, _____, _____

_____

**SELLER:**

DATED: _05 - 01 - 2017_

Sergio Rodrigo Romecin
3503 W Danube Dr
West Jordan, Utah, 84129

STATE OF UTAH, COUNTY OF SALT LAKE, ss:

This instrument was acknowledged before me on this _1_ day of _May_ , _2017_ by Sergio Rodrigo Romecin.

NOTARY PUBLIC
JORGE ENRIQUE USCATEGUI
075341
COMMISSION EXPIRES
APRIL 16, 2018
STATE OF UTAH

_____
Notary Public

_Public Notary_
Title (and Rank)

My commission expires _April 16, 2018._

**BUYER:**

DATED: _____ 05-01-2017 .

_____

Alex Moreno
7998 S 3960 W
West Jordan, Utah, 84088


STATE OF UTAH, ss:COUNTY OF SALT LAKE, ss:

This instrument was acknowledged before me on this __1__ day of __May__,
__2017__ by Alex Moreno.

_____
Notary Public

Public Notary.
Title (and Rank)

My commission expires _April 16, 2018_

NOTARY PUBLIC
JORGE ENRIQUE USCATEGUI
675341
COMMISSION EXPIRES
APRIL 16, 2018
STATE OF UTAH

EXHIBIT D



Petley & Associates Law Office, LC
9488 South Union Square, 2nd Floor
Sandy, Utah 84070
Telephone: 801-984-0055

## DEMAND NOTICE TO VACATE
## (5-DAY)

February 23, 2018

TO:   ALEX MORENO and ERIKA MIRANDA
      and all other occupants
      7998 South 3960 West
      West Jordan, UT 84088

Pursuant to Section 78B-6-802 U.C.A. (1953), demand is made on you to vacate and make available to the current owner, UNLIMITED VENTURES UTAH, LLC, the premises now occupied by you located at 7998 South 3960 West, West Jordan, Utah.

This demand must be complied with in full and you must vacate the premises within five (5) days after receipt of this demand notice.

This demand is made pursuant to your default in the payment of rent which became due January 1, 2018 in the amount of $1,900.00 and February 1, 2018, in the amount of $1,900.00.

Please note that if you fail to comply with this notice within said five-day period, you will be guilty of unlawful detainer and liable for treble rents and damages, and attorney's fees pursuant to the provisions of Utah Code Annotated §78B-6-811. You must vacate the premises within said five (5) day period.

Jax H. Petley, ST
Attorney for Unlimited Ventures Utah, LLC

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. *Unless you dispute the validity of this debt within 30 days it will be assumed by the landlord to be valid. If you notify the landlord or this office in writing, within 30 days, that you dispute the debt or any portion thereof, the landlord will obtain & mail to you verification of this debt or a copy of a judgment against you. Upon your written request within the 30 day period, the landlord, or the person or entity serving this notice, will provide you with the name & address of the original landlord, if different from the current landlord.*

# Served/Posted February 27, 2018



EXHIBIT E

## FIFTEEN DAY NOTICE TO VACATE

This Notice is given to:

Alex Moreno, Erika Miranda, & all other occupants
Name

7998 South 3960 West
Address

West Jordan, Utah 84088
City, State, Zip

This Notice is given by:

Heideman & Associates on behalf of: Sam & Marcia Rangel
Name

2696 North University Avenue, Suite #180
Address

Provo, Utah   84604
City, State, Zip

You must vacate the premises you now rent by March 31, 2018, which is the last day of your rental period.

If you do not comply with this notice, you will be served with a Summons and Complaint for unlawful detainer. Unlawful detainer is when you remain in possession of rental property after the owner serves you with a lawful notice to leave, such as this eviction notice. If you are found by the court to be in unlawful detainer, you will be evicted by the court and you will be liable for:

(1) any rent due and unpaid through the end of your rental agreement, less any amounts the landlord receives from the next tenant;
(2) damages caused by your unlawful detainer of the rental property;
(3) damages for any waste of the rental property caused by you, if and only if the landlord alleges them in a court complaint and proves them at trial, or submits them to the court by affidavit in the event of your default (Waste is damage you cause beyond normal wear and tear.);
(4) damages as provided in Utah Code §78B-6-1107 through 1114 for the abatement of nuisance, if any, caused by you. (Abatement of nuisance means to stop a nuisance.);
(5) attorneys fees and court costs.

You will also be liable for three times those damages allowed to be trebled under Utah Code §78B-6-811 which specifically may include trebling all of those damages mentioned above except attorneys fees and court costs. Damages under (2) are the reasonable rental value or reasonable value of the use and occupation of the premises for each day you remain after the expiration of this notice. In most cases trebling damages under (2) means the court will times the amount you have been paying for rent by three for every day you remain in the property after the last day you were given to leave under this eviction notice. Please contact your landlord to discuss this situation.

Date: March 12, 2018

Christian Vargas
Signature of Person Giving Notice

### RETURN OF SERVICE

This Notice was served on _____ (name)
on <u>March 12, 2018</u> in the following way:

[ ]   A copy was delivered to the tenant personally.
[X]   A copy was sent through certified or registered mail to the tenant's address.
[X]   A copy was posted in a conspicuous place on the premises because no one was
      home.
[ ]   A copy was left with _____ (name),
      a person of suitable age and discretion at (choose all that apply):
      [ ]   tenant's residence, or
      [ ]   tenant's place of business
      AND a second copy was mailed to
              [ ]   tenant's residence, or
              [ ]   tenant's place of business

              Sign here:   Christian Vargas
                           Person Serving This Notice

# EXHIBIT F

# THREE DAY NOTICE TO PAY OR TO VACATE

This Notice is given to:

Alex Moreno, Erika Miranda & all other occupants

Name

7998 South 3960 West

Address

West Jordan, Utah 84088

City, State, Zip

This Notice is given by:

Heideman & Associates on behalf of: Scarlett Menjivar and/or Josue J. Ramirez

Name

2696 North University Avenue, Suite 180

Address

Provo, Utah 84604

City, State, Zip

**You are behind in your payments required by your rental agreement with your landlord.  You are required to either pay everything you owe as indicated below, or move out within three calendar days.**

1. Within **three calendar days** you must pay the entire amount of money that is now owing to your landlord for rent.  The total amount due is $6,900.00. Rent is due for the following time period(s): $450 for January 2018, $450 for February 2018, $2,000 for March 2018, $2,000 for April 2018, and $2,000 for May 2018.

2. Within **three calendar days** you must pay the entire amount of money that is now owing to your landlord for amounts due under the rental contract other than rent. The amount due is $0.  The amounts due other than rent are as follows: N/A.

3. If you do not pay all of the money you owe within **three calendar days, counting weekends and holidays,** you must vacate the premises you have rented.

If you do not comply with this notice, you will be served with a Summons and Complaint for unlawful detainer. Unlawful detainer is when you remain in possession of rental property after the owner serves you with a lawful notice to leave, such as this eviction notice.  If you are found by the court to be in unlawful detainer, you will be evicted by the court and you will be liable for:

(1) Any rent due and unpaid through the end of your rental agreement, less any amounts the landlord receives from the next tenant;

(2) Damages caused by your unlawful detainer of the rental property;

(3) Damages for any waste of the rental property caused by you, if an only if the landlord alleges them in a court complaint and proves them at trial or submit

them to the court by affidavit in the event of your default.  (Waste is damage you cause beyond normal wear and tear.);

(4) Damages as provided in Utah Code §78B-6-1107 through 1114 for the abatement of nuisance, if any, caused by you.  (Abatement of nuisance means to stop a nuisance.);

(5) Attorney's fees and court costs.

You will also be liable for three times those damages allowed to be trebled under Utah Code §78B-6-811 which specifically may include trebling all of those damages mentioned above except attorney's fees and court costs.  Damages under (2) are the reasonable rental value or reasonable rental value of the use an occupation of the premises for each day you remain after the expiration of this notice.  In most cases trebling damages under (2) means the court will times the amount you have been paying for rent by three for every day you remain in the property after the last day you were given to leave under this eviction notice. Please contact your landlord to discuss this situation.

Date: _____          _____
                                        Signature of Person Giving Notice

## RETURN OF SERVICE

This Notice was served on **Alex Moreno, Erika Miranda & all other occupants** on **May 14, 2018** in the following way:

[ ]     A copy was delivered to the tenant personally.

[ ]     A copy was sent through certified or registered mail to the tenant's address.

[ ]     A copy was posted in a conspicuous place on the premises because no one was home.

[ ]     A copy was left with _____ (name), a person of suitable age and discretion at (choose all that apply):

    [ ]     tenant's residence, or

    [ ]     tenant's place of business

        AND a second copy was mailed to

        [ ]     tenant's residence, or

        [ ]     tenant's place of business

Sign here: _____
                   Person Serving This Notice

EXHIBIT G

# THREE DAY NOTICE TO PAY OR TO VACATE

This Notice is given to:

Alex Moreno, Erika Miranda & all other occupants
_____
Name

7998 South 3960 West
_____
Address

West Jordan, Utah 84088
_____
City, State, Zip

This Notice is given by:

Heideman & Associates on behalf of: Scarlett
Menjivar and/or Josue J. Ramirez
_____
Name

2696 North University Avenue, Suite 180
_____
Address

Provo, Utah 84604
_____
City, State, Zip

**You are behind in your payments required by your rental agreement with your landlord.  You are required to either pay everything you owe as indicated below, or move out within three calendar days.**

1. Within **three calendar days** you must pay the entire amount of money that is now owing to your landlord for rent.  The total amount due is **no less than** $4,200.00. Rent is due for the following time period(s): $1,400 for March 2018, $1,400 for April 2018, and $1,400 for May 2018.

2. Within **three calendar days** you must pay the entire amount of money that is now owing to your landlord for amounts due under the rental contract other than rent. The amount due is **no less than** $0.  The amounts due other than rent are as follows: N/A.

3. If you do not pay all of the money you owe within **three calendar days, counting weekends and holidays,** you must vacate the premises you have rented.

If you do not comply with this notice, you will be served with a Summons and Complaint for unlawful detainer. Unlawful detainer is when you remain in possession of rental property after the owner serves you with a lawful notice to leave, such as this eviction notice.  If you are found by the court to be in unlawful detainer, you will be evicted by the court and you will be liable for:

(1) Any rent due and unpaid through the end of your rental agreement, less any amounts the landlord receives from the next tenant;

(2) Damages caused by your unlawful detainer of the rental property;

(3) Damages for any waste of the rental property caused by you, if an only if the landlord alleges them in a court complaint and proves them at trial or submit

them to the court by affidavit in the event of your default.  (Waste is damage you cause beyond normal wear and tear.);

(4) Damages as provided in Utah Code §78B-6-1107 through 1114 for the abatement of nuisance, if any, caused by you.  (Abatement of nuisance means to stop a nuisance.);

(5) Attorney's fees and court costs.

You will also be liable for three times those damages allowed to be trebled under Utah Code §78B-6-811 which specifically may include trebling all of those damages mentioned above except attorney's fees and court costs.  Damages under (2) are the reasonable rental value or reasonable rental value of the use an occupation of the premises for each day you remain after the expiration of this notice.  In most cases trebling damages under (2) means the court will times the amount you have been paying for rent by three for every day you remain in the property after the last day you were given to leave under this eviction notice. Please contact your landlord to discuss this situation.

Date: _____        _____
                                        Signature of Person Giving Notice


## RETURN OF SERVICE

This Notice was served on **Alex Moreno, Erika Miranda & all other occupants** on **May 15, 2018** in the following way:

[ ]      A copy was delivered to the tenant personally.

[ ]      A copy was sent through certified or registered mail to the tenant's address.

[ ]      A copy was posted in a conspicuous place on the premises because no one was home.

[ ]      A copy was left with _____ (name), a person of suitable age and discretion at (choose all that apply):

    [ ]      tenant's residence, or

    [ ]      tenant's place of business

       AND a second copy was mailed to

          [ ]      tenant's residence, or

          [ ]      tenant's place of business

       Sign here:      _____
                                        Person Serving This Notice

# EXHIBIT H

| Date | Amount Paid | Amount Owing | Amount Due | Late Fee |
|---|---|---|---|---|
| 1-Jan-18 | $ 1,550.00 | $ 2,100.00 | 550 | $60.00 |
| 1-Feb-18 | $ 1,550.00 | $ 2,100.00 | 550 | $60.00 |
| 1-Mar-18 | $ - | $ 2,100.00 | 2100 | $60.00 |
| 1-Apr-18 | $ - | $ 2,100.00 | 2100 | $60.00 |
| 1-May-18 | $ - | $ 2,100.00 | 2100 | $60.00 |

**Total Rent Due at Time of Filing:**          $ 7,400.00   $ 300.00   $ 7,700.00

**Total Attorneys Fees:**      Presently $20,552.30. Total amount to be supported by affidavit at a later date.

**Property Damage:**                               unknown